COMMONWEALTH vs. ANCIL BENTLEY FORDE.

Suffolk.  April 3, 1984. — July 11, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Evidence,* Admissions and confessions. *Constitutional Law,* Admissions and confessions. *Homicide. Practice, Criminal,* Sentence.

Evidence at the hearing on a motion to suppress a statement made by a defendant to police officers warranted a finding that the defendant had made a knowing and voluntary waiver of his Miranda rights, despite the fact that the defendant had made the statement only after a police officer had suggested to the defendant that the defendant's fingerprints had been found on the victim's body, which was untrue. [454-456]
Evidence at a murder trial that the victim died as a result of manual strangulation lasting a minimum of one to two minutes warranted a finding of malice. [456]
Even if there had been insufficient evidence of premeditation at the trial of a murder case, the defendant was not prejudiced by the judge's charging the jury on murder in the first degree, since the jury returned a verdict of murder in the second degree. [456-457]
Evidence at the trial of a defendant charged with murdering his wife by strangling her was sufficient to warrant a finding of deliberate premeditation. [456-457]
A criminal defendant may not be convicted based solely on his uncorroborated confession; however, the corroborating evidence need only tend to show the occurrence of the loss or injury embraced in the crime charged, and need not point to the defendant as the one who committed it. [457-458]
The language of G. L. c. 279, § 1, prohibiting a judge from imposing a suspended sentence upon a defendant convicted of a crime "punishable by death or imprisonment for life" prohibits suspension of a mandatory life sentence imposed upon a conviction of second degree murder. [458-459]

INDICTMENT found and returned in the Superior Court Department on September 21, 1981.

A motion to suppress evidence was heard by *Kelley,* J., and the case was tried before him.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Roger Witkin* for the defendant.

*Leonard J. Henson,* Assistant District Attorney (*Paul J. McCallum,* Assistant District Attorney, with him) for the Commonwealth.

HENNESSEY, C.J. The defendant was indicted for the murder of his wife. His motions to suppress evidence and for a required finding of not guilty were denied. The jury returned a verdict of murder in the second degree. The defendant appealed, and we transferred the case here on our own motion. We affirm.

On July 17, 1981, the defendant filed a missing person report on his wife. On July 18, he reported to the police that he had discovered his wife's body on the back porch of their apartment. A police detective found no sign of assault on the victim or of forced entry to the apartment, and was told by the defendant that he had last seen his wife alive two days earlier, when he had dropped her off near her place of work.

On July 22, Sergeant Detective John Doris and Detective Emmanuel Dambreville came to the defendant's apartment. The defendant accompanied them to the police station, where he signed an incriminating statement. The defendant testified, at a hearing on his motion to suppress the statement, that no Miranda warnings had been given, that he had maintained his innocence, and that he had signed the statement at gunpoint. Doris and Dambreville testified that Miranda warnings had been given, that the defendant had made his statement after being told that fingerprints can be taken from a corpse, and that the defendant had not been threatened or coerced. The judge found that Miranda warnings had been given, that the defendant had knowingly, voluntarily, and intelligently waived his Miranda rights, and that the statement was voluntary.

1. *Admissibility of Defendant's Statement.*

The defendant argues that the Commonwealth has failed to sustain its burden of proving beyond a reasonable doubt that the defendant's waiver of his Miranda rights was knowing, intelligent, and voluntary. See *Commonwealth* v. *Day,* 387

Mass. 915, 920-921 (1983). As a necessary premise to his argument, the defendant challenges as clearly erroneous the judge's subsidiary finding that the defendant initiated the conversation as to whether fingerprints can be taken from a corpse. We assume for purposes of discussion that the finding was erroneous and that Sergeant Doris initiated the conversation which precipitated the defendant's statement.[1]

The defendant argues that Sergeant Doris's question implied that the defendant's fingerprints had been found on the body when in fact no fingerprint analysis had been, or ever was, done on the body, and that the defendant was thus tricked into waiving his right to remain silent. The cases cited by the defendant, however, do not support his conclusion. In *Commonwealth* v. *Jackson,* 377 Mass. 319, 325-329 (1979), the false statement made to the defendant was a form of interrogation used to induce the defendant to relinquish his right to remain silent after he had clearly asserted that right. The fact that the police used any form of interrogation after the assertion of the right to remain silent would itself have required suppression of the resulting statement. *Commonwealth* v. *Harvey,* 390 Mass. 203 (1983). *Commonwealth* v. *Brant,* 380 Mass. 876, cert. denied, 449 U.S. 1004 (1980). See *Rhode Island* v. *Innis,* 446 U.S. 291 (1980); *Michigan* v. *Mosley,* 423 U.S. 96 (1975). The fact that the statement was educed by trickery was "relevant but not conclusive." *Commonwealth* v. *Jackson, supra* at 328 n.8. See also *Commonwealth* v. *Meehan,* 377 Mass. 552, 562-563 (1979), cert. dismissed as improvidently granted, 445 U.S. 39 (1980). In the instant case, the defendant had not asserted his right to remain silent, and thus he is not necessarily entitled to suppression. See *Commonwealth* v. *Doucette,* 391 Mass. 443, 448-449 (1984). Nor do the characteristics of the

---

[1] At the hearing on the motion to suppress, Sergeant Doris testified as follows: "[A]t some point in time I told him that fingerprints could be taken off of a body, and I asked him if he could explain fingerprints — his fingerprints being on the body. And it was at this point in time that he decided that he would tell us what actually happened." On cross-examination defense counsel asked: "Was it Mr. Forde or one of you who initiated the inquiry about fingerprints off of dead bodies?" Sergeant Doris replied: "I believe I did."

accused or the circumstances of the interrogation suggest that
the defendant's waiver of his Miranda rights was anything but
voluntary, knowing, and intelligent. The use of misinformation
by the police does not in itself defeat a showing of voluntary
waiver of rights. See *Commonwealth* v. *Meehan, supra* at 563.
Having considered the totality of the circumstances, we con-
clude that the waiver was valid and that the defendant's state-
ments to the police were admissible.[2]

2. *Evidence of Malice.*

The defendant moved for a required finding of not guilty at
the conclusion of the Commonwealth's case in chief and again
at disposition. He now claims that it was error for the judge
to disallow this motion, as to so much of the indictment as
charged murder, because there was insufficient evidence of
malice. This contention is without merit. An inference of malice
arises from the intentional doing of an act likely to cause death
or grievous harm. *Commonwealth* v. *Palmariello, ante* 126,
142-143 (1984). *Commonwealth* v. *Casale,* 381 Mass. 167,
171-172 (1980). *Commonwealth* v. *McInerney,* 373 Mass. 136,
140-141 (1977). There was evidence that the victim died as a
result of manual strangulation lasting a minimum of one to
two minutes. This evidence alone was sufficient to raise an
inference of malice.

3. *Evidence of Premeditation.*

The defendant asserts that it was error for the judge to charge
the jury on murder in the first degree. Even if there were
insufficient evidence of premeditation, the error would be ren-
dered harmless beyond a reasonable doubt by the jury's verdict
of murder in the second degree. *Commonwealth* v. *Benoit,*
389 Mass. 411, 429 (1983). *Commonwealth* v. *Richard,* 377

---

[2] The defendant relies heavily on *Commonwealth* v. *Nott,* 135 Mass. 269
(1883). However, even assuming that that case is relevant, vis à vis *Miranda,*
it is distinguishable. In *Nott,* the police officer's statement to the defendant
implied "that it would be better to say something," and thus amounted to
"an inducement to make a confession of guilt." *Id.* at 272. But see *Common-
wealth* v. *Meehan, supra* at 564. Without an inducement, a mere statement
that denial is useless because the crime can be proven anyway does not
render a subsequent confession inadmissible. See *The Queen* v. *Jarvis,* 1
L.R.-Cr. Cas. Res. 96 (1867), cited in *Nott, supra* at 272.

Mass. 64, 65-66 (1979). There was, however, adequate evidence of premeditation. In addition to evidence of the manner of death, there was evidence that the victim and the defendant had been quarreling, and that when the defendant saw the victim approaching with a pot of boiling water, he stepped into the bathroom, then stepped out, knocked the pot from her hand, and began choking her. The jury would have been warranted in finding that, despite the relatively short time that had elapsed, "a plan to murder was formed after the matter had been made a subject of deliberation and reflection." *Commonwealth* v. *Tucker,* 189 Mass. 457, 494 (1905). See *Commonwealth* v. *Palmariello, supra* at 143-144; *Commonwealth* v. *McInerney, supra* at 153-154.

4. *Corroboration of the Confession.*

The defendant urges that we overrule our decisions that a conviction can be based solely on evidence of an extrajudicial confession by the accused. *Commonwealth* v. *Kimball,* 321 Mass. 290 (1947). See *Commonwealth* v. *Fiore,* 364 Mass. 819, 822 (1974); *Commonwealth* v. *Machado,* 339 Mass. 713, 716 (1959); *Commonwealth* v. *DiStasio,* 294 Mass. 273, 286 (1936), cert. denied, 302 U.S. 683 (1937); *Commonwealth* v. *Zelenski,* 287 Mass. 125, 129-130 (1934); *Commonwealth* v. *Killion,* 194 Mass. 153 (1907); *Commonwealth* v. *Williams,* 171 Mass. 461, 465 (1898); *Commonwealth* v. *Shaheen,* 15 Mass. App. Ct. 302, 307 (1983). In support of his argument the defendant asserts that the rule in all of the forty-nine other States is that an uncorroborated confession is insufficient to prove guilt. See *State* v. *Curlew,* 459 A.2d 160, 164 (Me. 1983); Annot., 45 A.L.R. 2d 1316 (1956). We note that, despite the impressive numbers, the majority rule has been criticized, and diluted, and the advantages of our flexible rule have been acknowledged. See, e.g., *State* v. *Tillman,* 152 Conn. 15, 18-20 & n.2 (1964); *State* v. *Pickard,* 104 N.H. 11, 13 (1962); 7 J. Wigmore, Evidence § 2070, at 510 (Chadbourn rev. 1978). Nonetheless, the majority rule has much to commend it, in that it precludes the possibility of conviction of crime based solely on statements made by a person suffering a mental or emotional disturbance or some other aberration.

We therefore agree with the defendant, and we hereby adopt the corroboration rule.

Although we have accepted his argument, the rule we have adopted is of no assistance to the defendant. The corroboration rule requires only that there be some evidence, besides the confession, that the criminal act was committed by someone, that is, that the crime was real and not imaginary. *State* v. *Curlew, supra* at 165. *State* v. *Jones,* 150 Me. 242, 246 (1954). The corroborating evidence need not point to the accused's identity as the doer of the crime. R. Perkins, Criminal Law 97-100 (2d ed. 1969). In its typical form, the corroboration rule requires that there be some evidence tending to establish the "corpus delicti," the strictness or liberality of the rule depending upon how "corpus delicti" is defined. It is usually defined to include not only the specific kind of loss or injury embraced in the crime charged (as death in a murder case), but also a criminal agency as the source of that loss or injury.[3] See, e.g., 7 J. Wigmore, *supra* § 2072, at 526, quoting Chief Justice Shaw's instructions in the *Webster* case (*Commonwealth* v. *Webster,* 5 Cush. 295 [1850]), as reported by G. Bemis. However, according to Wigmore, the orthodox meaning of "corpus delicti" is merely the fact of the loss or injury sustained. *Id.* at 524. We think that, in light of the purpose of the corroboration rule, i.e., to guard against conviction for imaginary crimes, this is the better definition. See *State* v. *Tillman, supra* at 20. Thus, in a homicide case, the corroborating evidence need only tend to show that the alleged victim is dead. The fact of the death of the victim is not disputed in this case.

5. *Suspension of the Sentence.*

The judge ruled that he had no discretion to suspend part of a life sentence for murder in the second degree. See G. L. c. 279, § 1. There was no error.

---

[3] Adoption of this stricter definition of "corpus delicti" would not benefit the defendant. Expert medical testimony established death of the victim by manual strangulation. This manner of death is inconsistent with accident, suicide, or natural causes, and thus points strongly, if not conclusively, to criminal agency as the cause of death.

General Laws c. 279, § 1, as amended through St. 1975, c. 347, permits judges to suspend all sentences except those of persons convicted of crimes "punishable by death or imprisonment for life." The statute obviously prohibits suspension of sentences for murder in the first degree, which is punishable by death or life imprisonment. In *Aldoupolis* v. *Commonwealth,* 386 Mass. 260, 263-267 (1982), we determined that the statute does not forbid suspension of sentences for crimes punishable by imprisonment for life or a term of years. This case presents the question whether a crime which carries the penalty of a mandatory life sentence, but no possibility of a death sentence, is within the statutory prohibition of suspension. We conclude that it is.

To resolve the question posed we must decide whether the Legislature intended that the statutory exception apply only to such crimes as carry both the possibility of a death sentence and a mandatory life sentence, or also to crimes which carry either one. We think the statutory language is more nearly consistent with an intent that the exception apply to crimes which carry either penalty. No statute, not even the statutes providing for the punishment of murder in the first degree (see G. L. c. 265, § 2; c. 279, §§ 68-71), declares the penalty for a crime using the precise phrase "death or imprisonment for life." Thus the Legislature could not have intended that the quoted language be read as a phrase, but rather must have intended that it be read as an alternative. In *Aldoupolis* v. *Commonwealth, supra* at 267, we decided that a crime is not within the exception of G. L. c. 279, § 1, if it provides for an alternative lesser penalty not mentioned in the exception. That decision does not require that a crime provide alternatively for both penalties mentioned in the exception in order to fall within it. We conclude that G. L. c. 279, § 1, forbids the suspension of a mandatory life sentence.

*Judgment affirmed.*