## COMMONWEALTH vs. WAYNE HUBBARD.[1]

No. 05-P-1614.

Hampden. October 11, 2006. - June 4, 2007.

Present: DUFFLY, BERRY, & MILLS, JJ.

*Firearms. Evidence,* Admissions and confessions. *Constitutional Law,* Admissions and confessions. *Necessity. Practice, Criminal,* Argument by prosecutor, Reasonable doubt, Instructions to jury. *Reasonable Doubt.*

The evidence at the trial of an indictment charging unlawful possession of a firearm, which included not only the defendant's own admission that he possessed the firearm, but also independent corroborative evidence of that possession [234-236], was sufficient to sustain a conviction that the defendant actually [237] or constructively [237] possessed the firearm.

At the trial of an indictment charging unlawful possession of a firearm, the judge correctly declined to give an instruction on the defense of necessity, where the defendant failed to meet the burden of demonstrating that he armed himself in response to a clear and imminent danger. [237-238]

At a criminal trial, certain questions posed by the prosecutor on redirect examination of a police officer did not amount to improper comment on the defendant's invocation of his right to remain silent, where the questions were appropriately placed to rebut the suggestion in cross-examination that the police had failed to follow proper procedure during their interview of the defendant, or had failed to ask the defendant questions that would have led to exculpatory answers and derivative exculpatory evidence. [238-240]

At a criminal trial, any prejudice arising from the prosecutor's reference to reasonable doubt in closing argument, which was not objected to by the defendant, was dispelled by the judge's instructions and did not create a substantial risk of a miscarriage of justice. [241]

This court discerned no abuse of discretion and no error arising from a trial court judge's response to a question posed by the jury. [241-242]

INDICTMENTS found and returned in the Superior Court Department on June 12, 2003.

The cases were tried before *Mary-Lou Rup,* J.

*Jeanne M. Kempthorne* for the defendant.

*Katherine E. McMahon,* Assistant District Attorney, for the Commonwealth.

---

[1]The defendant indicates that his real name is Dwayne Hubbard. As is our custom, we use the name set forth in the indictments.

BERRY, J. The defendant appeals from his convictions of one count of unlawful possession of a firearm and one count of unlawful possession of ammunition. The principal contention raised on appeal is that the only evidence establishing the offense element of possession[2] was the defendant's own incriminating statement/admission to the police. It is submitted that without independent evidentiary support, under the corroboration doctrine enunciated in *Commonwealth* v. *Forde*, 392 Mass. 453, 457-458 (1984), the defendant's inculpatory statement, standing alone, cannot be the exclusive proof of the possession element of the firearm charge.[3] We affirm.

1. *Trial evidence.* We summarize the trial evidence. In May, 2003, police officers, responding to 911 calls, arrived at 20 Clifton Avenue in Springfield. The defendant was standing by the street curb outside the house. The officers ordered the defendant to lie down on the ground. One Wanda Scruggs, who was standing within a fenced yard off to the side of the house, was also ordered to the ground. After handcuffing her, Officer Gonzalez rolled Scruggs over and discovered that her body had been covering a revolver-type handgun. Gonzalez yelled, "Gun!" At this point, the defendant said to the officer who had handcuffed him, "You caught her with the gun, it is not my gun."

The revolver was cocked in firing position, and when Officer Gonzalez attempted to secure the gun, it discharged. Gonzalez recovered spent casings and one remaining live round from within the revolver.

The defendant and Scruggs were transported to the police

[2]The offense elements under G. L. c. 269, § 10(*h*), for unlawful possession of a firearm or ammunition are (i) owning, possessing, or transferring possession of a firearm or ammunition without (ii) complying with the requirements relating to firearm identification cards set forth in G. L. c. 140, § 129C. Only the first element was contested at trial.

[3]The defendant's additional appellate contentions, which we address herein, are that (a) he was entitled to an instruction on the defense of necessity; (b) testimony improperly referencing the invocation of his right to remain silent violated his constitutional rights under *Doyle* v. *Ohio*, 426 U.S. 610 (1976); (c) he was not afforded the statutory right to make a telephone call; (d) the prosecutor improperly understated the Commonwealth's burden of proof in closing argument; and (e) the judge erred in refusing to respond to a question from the jury.

station. The defendant was read his Miranda rights, initialed a written form indicating that he understood these rights, and then gave a statement to Sergeant Carter and Officer Brodeur. At trial, the two police officers provided the following summary of the defendant's statement. The defendant told the officers that he had been involved in a fistfight with Scruggs's son in the living room of the house. After the two men had been separated, the defendant went to a spare bedroom and retrieved a handgun. The defendant stated that he subsequently went outside the house and fired two rounds from the gun into the sidewalk.

2. *The corroboration doctrine.* As previously noted, the defendant argues on appeal that the possession convictions must be reversed because the only evidence introduced at trial concerning the defendant's possession of the handgun was his incriminating statement to the police that he had held and discharged the firearm before throwing it to the ground. The defendant cites the corroboration doctrine set forth in *Commonwealth* v. *Forde*, 392 Mass. at 457-458. Specifically, the defendant argues that there was not independent evidence corroborative of this inculpatory admission and that, accordingly, the requisite offense element of possession of a firearm was not proved by sufficient evidence, and his convictions cannot stand. See *Commonwealth* v. *Leonard*, 401 Mass. 470, 472-473 (1988) (defendant's statements fell "short of being a confession of all the elements of guilt but [were] admissions pertaining to the only contested issue"). The defendant's characterization of the trial record, as discussed below, omits consideration of certain independent extrinsic corroborative evidence.

The corroboration doctrine requires "that there be some evidence, besides the confession [or admission], that the criminal act was committed by someone, that is, that the crime was real and not imaginary." *Commonwealth* v. *Forde*, 392 Mass. at 458. The corroboration doctrine had its origins in criminal offenses against the person of another causing injury or death to the victim. The doctrine required that, beyond the defendant's confession or admission of having committed such a personal injury crime, there also must be corroboration by "some evidence tending to establish the 'corpus delicti,' " and embracing "the specific kind of loss or injury embraced in the

crime charged." *Ibid.* In other words, there must be corroborating evidence establishing the corpus delicti, i.e., the "body of the crime." Black's Law Dictionary 369 (8th ed. 2004).

Although the corroboration doctrine was formulated in connection with crimes against the person, which perforce involve proof of the corpus delicti of a human body and death or harm to that body, the doctrinal requirement for corroborative evidence also has been invoked in other criminal contexts where the only evidence comes from the defendant's confession or inculpatory admission, not bolstered by corroborative facts. In this further development of the law, the corroboration doctrine set forth in *Forde* has been applied to other types of criminal offenses that do not implicate a body as "corpus delicti."

Thus, in *Commonwealth* v. *Leonard*, 401 Mass. at 472-473, in reviewing a conviction under G. L. c. 90, § 24, of operating a motor vehicle under the influence of alcohol, the Supreme Judicial Court, citing the *Forde* corroboration rule, addressed the question whether proof of the offense element of operation could be based solely on the defendant's admission that he, rather than his wife (who had not consumed any alcoholic beverage), had been driving the car. The court applied the *Forde* corroboration doctrine that there must be "some evidence, besides the confession, that the criminal act was committed by someone, that is, that the crime was real and not imaginary." *Commonwealth* v. *Leonard, supra* at 473, quoting from *Commonwealth* v. *Forde*, 392 Mass. at 458. The court next determined that, apart from the defendant's admission, insufficient independent evidence had been introduced to corroborate that the defendant had operated the motor vehicle; accordingly, the court reversed the conviction. *Commonwealth* v. *Leonard, supra.* Contrast *Commonwealth* v. *McNelley*, 28 Mass. App. Ct. 985, 987 (1990) (under *Forde* standard, evidence was sufficient to corroborate defendant's statement that he had operated vehicle where no other persons or vehicles were in vicinity); *Commonwealth* v. *Manning*, 41 Mass. App. Ct. 18, 20-22 (1996).

The corroboration doctrine, as it has evolved from pure corpus delicti cases to other types of criminal cases, would appear to apply to proof of criminal possessory offenses, such as unlawful possession of a firearm. In other words, where the defendant's

confession or incriminating admission is the only evidence of unlawful possession of the firearm, the corroboration doctrine would require something more to convict. Indeed, it may be said that such possession-based criminal cases (rather than, for example, the motor vehicle criminal offenses at issue in *Leonard* and *Manning*) are more akin to the origins of the corroboration doctrine because an orthodox corpus delicti-based criminal offense involves a real, tangible thing — a body; similarly, an unlawful possession of a firearm offense also involves a real, tangible thing — a gun.

Given the foregoing, we will assume for purposes of discussion that the corroboration doctrine does apply to the crime of unlawful possession of a firearm. As so applied in this case, had the only evidence introduced at trial been the defendant's incriminating statement/admission that he possessed the firearm, that admission without more in the way of independent corroborative evidence would not be sufficient to prove possession and support the convictions. However, if the defendant's incriminatory statement/admission concerning possession did not stand alone, but rather was buttressed by other independent evidence "that the crime was real," *Commonwealth* v. *Forde*, 392 Mass. at 458, there would be evidentiary support sufficient for the convictions.

Applying these concepts, we conclude that there was sufficient independent extrinsic evidence. First, the defendant stated that he had been within the house, but after a fight with another he retrieved a gun from a bedroom and went outside. In corroboration: the defendant was found outside when the police arrived. Second, the defendant stated that he took the gun outside. In corroboration: a gun was found outside the house. Third, and relatedly, the defendant stated that the particular type of firearm he had possessed was a handgun. In corroboration: it was a handgun that was recovered outside the house. Fourth, the defendant told the police that he fired the firearm twice after he went outside. In corroboration: multiple spent casings were recovered from inside the handgun, indicating that the weapon had been fired more than once. This set of four marking factors is sufficient to establish the requisite corroboration for the defendant's statement/admission that he possessed the gun.

3. *Possession.* In order to sustain a conviction for unlawful possession of a firearm, the Commonwealth must prove beyond a reasonable doubt that the defendant actually or constructively possessed the firearm. We conclude that the Commonwealth presented sufficient evidence under either theory. As discussed above, the defendant's incriminating admission regarding his retrieval of the gun in the house and his possession and discharge of the gun outside — all as further supported by the independent corroborative factors analyzed above — were sufficient to sustain a conviction on a theory of actual possession.

In any event, the Commonwealth additionally presented sufficient evidence to sustain a theory of constructive possession. " 'Constructive possession' requires proof that the defendant had 'knowledge coupled with the ability and intention to exercise dominion and control.' " *Commonwealth* v. *Sann Than*, 442 Mass. 748, 751 (2004), quoting from *Commonwealth* v. *Sespedes*, 442 Mass. 95, 99 (2004), and *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 409 (1989). In this case, constructive possession required evidence that "the defendant knew that the handgun was in the [possession of Scruggs] and that he had control (although not necessarily exclusive control) over it." *Commonwealth* v. *Sann Than*, 442 Mass. at 753.

We apply the standard of review set forth in *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). At the time the gun was seized, it was under Scruggs's body. The evidence was that Scruggs was the defendant's girlfriend, and that she had been involved in breaking up the fight between the defendant and her son. With the evidence viewed in the light most favorable to the Commonwealth, and marshaling as part of that evidence the defendant's incriminating admission as supported by the extrinsic corroborative factors analyzed above, we conclude that there was sufficient evidence to establish that the defendant had knowledge of, and the ability to exercise control over, the weapon, such that the defendant constructively possessed the weapon.

4. *The necessity defense.* The defendant requested a jury instruction on the defense of necessity on the basis that he had armed himself in self-defense following his altercation with Scruggs's son. The trial judge declined to give such an

instruction. This was correct. The necessity defense was not established, and accordingly, the defendant was not entitled to such an instruction. "[T]he application of the defense [of necessity] is limited to the following circumstances: (1) the defendant is faced with a clear and imminent danger, not one which is debatable or speculative; (2) the defendant can reasonably expect that his [or her] action will be effective as the direct cause of abating the danger; (3) there is [no] legal alternative which will be effective in abating the danger; and (4) the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue." *Commonwealth* v. *Leno*, 415 Mass. 835, 839 (1993), quoting from *Commonwealth* v. *Schuchardt*, 408 Mass. 347, 349 (1990).

The defendant bears "the initial burden of producing evidence sufficient to raise" the defense of necessity. *Commonwealth* v. *Brugmann*, 13 Mass. App. Ct. 373, 379 (1982). In the instant case, the defendant failed to meet this burden. As the defendant admitted in his statement to the police, his fistfight with Hakeem Scruggs had been halted when the two men were separated by Wanda Scruggs and Hakeem's wife. There was no evidence that after this separation, when the defendant went to the bedroom and retrieved the firearm, the defendant was faced with a clear and imminent danger. Further, there was no evidence that Hakeem Scruggs was armed, or that he was in pursuit of the defendant. On this evidence, the defendant was not entitled to a necessity defense instruction.

5. *The* Doyle *issue.* The defendant argues that certain questions posed by the prosecutor on redirect examination of one of the police officers, Sergeant Carter, amounted to improper comment on the defendant's invocation of his right to remain silent, and thus violated his due process rights under the Fourteenth Amendment to the United States Constitution, as articulated in *Doyle* v. *Ohio*, 426 U.S. 610 (1976).

"There is no question that, under the fundamental principles of jurisprudence, evidence of a criminal defendant's postarrest, post-Miranda silence cannot be used for the substantive purpose of permitting an inference of guilt." *Commonwealth* v. *Mahdi*, 388 Mass. 679, 694 (1983). However, "[t]here are rare instances where evidence of a defendant's postarrest, post-Miranda silence

or request for counsel may be admissible." *Commonwealth* v. *DePace*, 433 Mass. 379, 383 (2001). These rare instances may involve challenges by a defendant to the manner in which a police interview is conducted and may involve circumstances whereby a defendant begins to speak to the police, but then decides to stop speaking, ending the interview and invoking his constitutional right to remain silent.

In such instances, the manner and means by which the interview was conducted by the police, what was asked of the defendant, and what transpired leading to the defendant's ending the interview may be "admissible to explain why the police interview ended abruptly if, at trial, the defendant suggests that the statement he had begun to give ended abruptly because of some impropriety in the interrogation technique used. . . . Such evidence also may be admissible if it would appear that the interview ended abruptly and the jury would be confused. . . . In such circumstances, a defendant's exercise of his constitutional rights is not being used against him." *Commonwealth* v. *DePace*, 433 Mass. at 384. These principles apply here.

The prosecutor's redirect examination of Sergeant Carter falls within the rare class where inquiry concerning why the defendant did not answer certain questions asked by the police was appropriate and not constitutionally violative. Specifically, in this case, in cross-examination of the sergeant, defense counsel pursued a line of inquiry regarding whether proper procedures had been followed during the interview (whether the defendant had an opportunity to read a written version of his statement and provide corrections) as well as inquiry about questions that the officer did *not* ask the defendant — presumably to suggest that, if asked, the defendant would have answered in an exculpatory manner. This cross-examination, from all that appears of record, was designed to leave the suggestion that the police interview practice was flawed and misleading by omission, as the police officers failed to ask the defendant questions that would have led to a complete, and exculpatory, statement.

On redirect examination of the sergeant, the prosecutor posed a series of questions which the Commonwealth contends were

appropriately placed to rebut the suggestion in the cross-examination that the police had failed to follow proper procedures, or had failed to ask the defendant about things that would have led to exculpatory answers and derivative exculpatory evidence. Having reviewed the sequence in the trial record of defense cross-examination and prosecution redirect examination, and the specific questions challenged by the defendant on appeal, we determine the prosecutor's questions were not about, and were not comment on, the defendant's silence. Thus, none of the questions had the result of "us[ing] . . . the defendant's silence against him." *Commonwealth* v. *Waite*, 422 Mass. 792, 798 (1996). We note that, "[i]n contrast to the right to present a defense, . . . a defendant has no right to create confusion." *Ibid.* The "testimony on redirect examination was properly admitted in response to the inferences left by defense counsel on cross-examination." *Commonwealth* v. *Habarek*, 402 Mass. 105, 110 (1988).

6. *The statutory right to make a telephone call.* The defendant argues that he was not afforded his statutory right pursuant to G. L. c. 276, § 33A, to make a telephone call within one hour of his arrival at the police station, and that his subsequent confession was, therefore, not voluntary and should have been suppressed. See, e.g., *Commonwealth* v. *Jones*, 362 Mass. 497, 502-503 (1972). The evidence regarding notification to the defendant of his right to make a telephone call was as follows. Exhibit 3 in evidence was a preprinted form, partially filled out by the defendant and police officers in the detective bureau, indicating that the defendant had received his Miranda warnings; the bottom portion of that document, concerning the notification to the defendant of his right to make a telephone call, was not filled out. Sergeant Carter, who interviewed the defendant, did not know whether the defendant was afforded this right prior to being brought to the detective bureau. The defendant arrived at the police station at approximately 3:10 A.M. and was administered the Miranda warnings in the detective bureau at approximately 3:34 A.M.

On this record, we cannot determine whether the defendant was advised of or afforded his statutory right to use the telephone before he was interviewed in the detective bureau. The defendant

is free to litigate this matter in a motion for new trial.[4] See *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 344 (1994).

7. *The prosecutor's reference to reasonable doubt in the closing.* In her closing, the prosecutor made the following statement to the jury:

> "You have to rely on the testimony of the people who actually witnessed this arrest and this event. Because if you look for doubt, you will find doubt and that is not this [*sic*] standard of law that the Commonwealth requires because you, as jurors, took an oath to seek the truth. If you look for doubt, you will find it. That is not what you are supposed to do."

The defendant argues that this materially misstated the burden of proof. Because the defendant did not object to this statement in the closing argument, the substantial risk of a miscarriage of justice standard of review governs. *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 n.8 (1987).

It was assuredly "not good practice for the prosecutor to discuss the definition of 'reasonable doubt' in the closing argument." *Commonwealth* v. *Deloney*, 59 Mass. App. Ct. 47, 53 (2003). Notwithstanding the prosecutor's stepping onto forbidden ground, the trial judge clearly instructed the jury that they must apply the law as stated by the judge. The judge then proceeded to define and instruct on reasonable doubt fully in accordance with *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850). "In these circumstances, we conclude that any prejudice resulting from the prosecutor's comments, which were not objected to, was dispelled by the judge's instructions and did not create a substantial risk of a miscarriage of justice." *Commonwealth* v. *Rupp*, 57 Mass. App. Ct. 377, 385 (2003).[5]

8. *The jury's question.* During deliberations, the jury sent the

---

[4]Because we conclude that an insufficient foundation exists for us to determine whether the defendant was, in fact, deprived of his right to make a telephone call, we need not reach the issue whether this claim was preserved at trial by defense counsel's broader argument on the voluntariness of the defendant's confession.

[5]While not condoning the prosecutor's assumption of the role of legal instructor to the jury, we note that the challenged reference to reasonable doubt as not involving a "search for doubt" has been upheld when that phrase was incor-

following question to the court: "Is the prosecution allowed to re-direct with questions after Commonwealth closes?" At trial, defense counsel urged the judge to answer the question in the affirmative. The judge declined to do so. The judge viewed the question as procedural and instructed the jury that the court did not respond to procedural questions. "The proper response to a jury question must remain within the discretion of the trial judge, who has observed the evidence and the jury firsthand and can tailor supplemental instructions accordingly." *Commonwealth* v. *Waite*, 422 Mass. at 807 n.11. We discern here no abuse of discretion and no error.

*Judgments affirmed.*

porated in a jury instruction. See, e.g., *Commonwealth* v. *Watkins*, 425 Mass. 830, 839 (1997) (upholding instruction explaining that reasonable doubt "is not the doubt that might exist in the mind of a man or a woman searching for some doubt, for some excuse to acquit a defendant").