## COMMONWEALTH vs. DEQUAN BELMER.

No. 09-P-1778.

Suffolk. September 8, 2010. - October 14, 2010.

Present: COHEN, GRAINGER, & MEADE, JJ.

*Assault and Battery. Abuse Prevention. Protective Order. Evidence,* Prior
inconsistent statement, Cross-examination, Corroborative evidence. *Prac-
tice, Criminal,* Affidavit.

This court concluded that the rule announced in *Commonwealth* v. *Daye,* 393
Mass. 55, 74-75 (1984), permitting a sworn prior inconsistent statement to
be admitted in evidence at a criminal trial for its full probative value, so
long as the declarant was subject to cross-examination at trial, could be
expanded to apply to an affidavit that results in the issuance of a G. L.
c. 209A abuse prevention order, where such an affidavit is made under the
pains and penalties of perjury; where such an affidavit is in writing, which
eliminates subsidiary inquiries into whether the statement was actually
made; and where such an affidavit comprises part of a complaint for
protection that must be brought in court before a judge, thereby conveying
the requisite formality. [64-66]
At the trial of a criminal complaint charging the defendant with assault and
battery, the judge did not abuse his discretion in admitting, as a prior
inconsistent statement, an affidavit in support of a G. L. c. 209A abuse
prevention order, where the declarant wrote the affidavit herself, and the
defendant had a full opportunity to cross-examine her [66-68]; moreover,
there was sufficient evidence to demonstrate that the crime was real and
not imaginary, thus corroborating the affidavit [68-69].

COMPLAINT received and sworn to in the Dorchester Division
of the Boston Municipal Court Department on May 19, 2009.

The case was heard by *Lawrence E. McCormick,* J.

*James P. Vander Salm* for the defendant.

*Paul B. Linn,* Assistant District Attorney (*Lauren E. Greene,*
Assistant District Attorney, with him) for the Commonwealth.

MEADE, J. After a jury-waived trial, the defendant was con-
victed of assault and battery in violation of G. L. c. 265, § 13A.
On appeal, the defendant claims that the trial judge improperly

extended the rule of *Commonwealth* v. *Daye*, 393 Mass. 55 (1984), to permit an affidavit in support of a G. L. c. 209A abuse prevention order to be used as substantive evidence at trial. As a result, the defendant claims that the evidence supporting his conviction was insufficient as it was based on inadmissible hearsay. We affirm.

1. *Background.* On the evening of May 18, 2009, emergency medical technician (EMT) Michael Murphy and Boston police Detective Wendell Josey responded to a domestic violence call at a home in the Mattapan section of Boston. When they arrived, they saw the victim, a fifteen year old boy, bleeding from his lip. The victim was taken by an ambulance to Boston Medical Center (BMC), where he needed ten stitches to close his wound.

The following day, the victim's mother, Edith Allen-Belmer, went to court and obtained an abuse prevention order against her husband, the defendant, pursuant to G. L. c. 209A, § 3. In her affidavit in support of the restraining order, she swore under penalty of perjury that she and the defendant had been arguing the previous night about his infidelity. The victim had intervened and warned the defendant not to touch his mother. The defendant had responded by instigating a fight with the victim, which ended when the defendant "punch[ed] [the victim] in the face," knocking him to the floor. The blow left the victim bleeding and "dazed for about 2 or 3 second[s]." At a hearing on the c. 209A order, Allen-Belmer repeated these claims under oath before a judge.

At trial, over the defendant's objection, the judge allowed the prosecutor to question Allen-Belmer about her testimony at the c. 209A hearing and to admit in evidence her c. 209A affidavit. In her trial testimony, Allen-Belmer denied that the defendant punched the victim. Instead, she claimed that her argument with the defendant was purely verbal, and that the defendant was "talk[ing] with his hands" during the argument. Eventually, the victim came out of his room and approached his parents. At that moment, the defendant accidentally struck the victim's face with his elbow. Afterwards, the defendant helped the victim up off the floor and took him to the bathroom to wash his wound.

Allen-Belmer acknowledged that her trial testimony differed from the claims in her c. 209A affidavit, but she claimed that

she had been "angry at th[e] time" she made the affidavit. On cross-examination, she explained that she had been angry about both the defendant's infidelity and the fact that her son had been injured.

The victim testified that he tried to break up the argument between his parents. As he was walking up behind the defendant, the defendant grabbed some keys away from Allen-Belmer. This motion caused the defendant's elbow to fly backward and strike the victim in his lip. The victim fell to the floor and blacked out for a few seconds. Even after he regained consciousness, he was confused and kept "fading in and out." He recalled the defendant trying to wash his wound. He did not recall telling the police or anyone else that the defendant had punched him.[1]

The Commonwealth also introduced the EMT report and the BMC records, without objection,[2] which related to the victim's treatment. The EMT report stated that the victim reported "being struck in the face once with a closed by his father [*sic*]." Similarly, the BMC records stated that the victim reported being "struck in face by father/closed fist," that "[h]is father struck him in the face and he fell face down to the floor," and that he suffered an "assault by dad when attempting to defend mom from abuse." After clarifying that the Commonwealth was proceeding on an intentional battery theory, the judge found the defendant guilty of assault and battery.

2. *Discussion.* a. *The* Daye *rule.* In *Commonwealth* v. *Daye,* 393 Mass. at 74-75, the Supreme Judicial Court adopted Proposed Mass. R. Evid. 801(d)(1)(A), which permits a sworn prior inconsistent statement to be admitted for its full probative value, so long as the declarant is subject to cross-examination at trial. The court adopted this rule for a witness's grand jury testimony that met the applicable requirements, but "defer[red] consideration of issues relating to the probative use of other prior incon-

---

[1]The Commonwealth impeached the victim with testimony from EMT Murphy and Detective Josey that the victim had said on the night of the incident that the defendant had punched him. This evidence was not offered substantively.

[2]When the Commonwealth offered the records, defense counsel said, "I still . . ." but was interrupted by the judge, who admitted the records. After the ruling, counsel said only that he had not yet seen the records. The prosecutor responded that the records had been in the clerk's file "since the pretrial," whereupon the judge repeated his ruling.

sistent statements, . . . believing that any further change will be best accomplished through the 'incremental process of common law development' rather than a general rule." *Id.* at 71, quoting from *Matter of Roche*, 381 Mass. 624, 639 & n.16 (1980). In subsequent cases, the Supreme Judicial Court has expanded the *Daye* rule to apply to probable cause hearing testimony, *Commonwealth* v. *Sineiro*, 432 Mass. 735, 745 (2000); see *Commonwealth* v. *Fort*, 33 Mass. App. Ct. 181, 185 (1992), and this court has expanded the rule to testimony from a prior trial. *Commonwealth* v. *Newman*, 69 Mass. App. Ct. 495, 497-498 (2007). See Mass. G. Evid. § 801(d)(1)(A) (2010). In this case, we determine that the *Daye* rule may appropriately be expanded to apply to c. 209A affidavits that result in the issuance of an abuse prevention order.

b. *G. L. c. 209A affidavits.* Like grand jury testimony, a c. 209A affidavit carries several indicia of reliability. First, by definition it must be made under the pains and penalties of perjury. See *Commonwealth* v. *Francis*, 432 Mass. 353, 372 n.16 (2000) (affidavit must be signed under the pains and penalties of perjury). Second, c. 209A affidavits are in writing, which will eliminate "subsidiary inquiries into whether the statement was actually made that would unacceptably attenuate the statement's probative worth." *Commonwealth* v. *Daye, supra* at 72. Third, the affidavit comprises part of a complaint for protection that must be brought in court before a judge, see G. L. c. 209A, § 3, which conveys even more formality than grand jury proceedings, in which a witness faces a group of civilians in a private room. See, e.g., *Commonwealth* v. *Clements*, 436 Mass. 190, 192 (2002) (witness testified at trial that he "had not appreciated the seriousness of his accusations" to grand jury).

The defendant makes several policy-based arguments to support his claim that c. 209A affidavits are less reliable than grand jury testimony, none of which we find convincing. First, he claims that because c. 209A proceedings are civil in nature, they are not as serious as criminal grand jury proceedings and hence are less reliable. This ignores the fact that a violation of a c. 209A abuse prevention order is a criminal offense punishable by up to two and one-half years in the house of correction,

G. L. c. 209A, § 7, and the order itself often results in the dispossession of an accused's residence.

Second, citing Guidelines for Judicial Practice: Abuse Prevention Proceedings § 3:04 and § 3:07 commentary (Dec. 2000) (Guidelines), the defendant also posits that c. 209A affidavits are unreliable because the Guidelines provide those seeking such orders with "unique deference." However, we cannot endorse the defendant's cynical view of judicial guidelines, which promote sensitivity to domestic violence victims and state a preference for sidebar hearings to accommodate privacy concerns, to conclude they produce inherently untrustworthy testimony. In any event, grand jury witnesses are presented in a less formal, ex parte manner, having been prepared solely by the prosecutor and without any external test to their credibility.

Third, the defendant's final basis for skepticism of the reliability of c. 209A affidavits is grounded in the "active role often played by the victim-witness advocate in facilitating [c. 209A] testimony." Essentially, the defendant claims that those seeking an abuse prevention order might have been coached or provided a road map of the necessary elements of a successful order by an overzealous victim-witness advocate. However, the defendant offers no evidentiary support for such a claim, and indeed, there is no evidence in this case that Allen-Belmer was coached or cajoled into seeking the c. 209A order. Even were such a concern realistic, it does not separate c. 209A testimony from that of grand jury witnesses, who theoretically could be influenced in the same manner. In the end, "we are satisfied that the truth-seeking function of trials may be enhanced rather than diminished if consideration of [qualifying c. 209A affidavits'] probative value is permitted." *Commonwealth* v. *Daye, supra* at 71.

c. Daye *criteria.* In *Commonwealth* v. *Daye, supra,* the court set out two criteria for the admission of a sworn prior inconsistent statement as substantive evidence: first, the declarant must be subject to cross-examination by the defense, *id.* at 73; and second, the prior statement must have been in the declarant's own words, as opposed to being simply "yes" or "no" answers to leading questions. *Id.* at 74. The court also held that when the statement "concerns an essential element of the crime, the

Commonwealth must offer at least some corroborative evidence[,]" but the court later explained that this requirement affects only the sufficiency of the evidence, not the admissibility of the statement. *Commonwealth* v. *Clements*, 436 Mass. at 192-193. See *Commonwealth* v. *Ragland*, 72 Mass. App. Ct. 815, 823 (2008).

Here, there is no dispute that Allen-Belmer wrote the c. 209A affidavit herself, and that it contradicted her trial testimony. Relative to the *Daye* requirements for admissibility, the defendant's only claim is that he was not allowed to fully cross-examine Allen-Belmer. We disagree.

The Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights provide defendants with an opportunity for cross-examination; they do not guarantee a "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Commonwealth* v. *Cong Duc Le*, 444 Mass. 431, 438 (2005), quoting from *United States* v. *Owens*, 484 U.S. 554, 559 (1988), quoting from *Kentucky* v. *Stincer*, 482 U.S. 730, 739 (1987). See *Commonwealth* v. *Edwards*, 444 Mass. 526, 535 (2005) ("the right to cross-examine adverse witnesses under art. 12 is not absolute"). At bottom, the right to cross-examination "is subject to the judge's broad discretion." *Commonwealth* v. *Lucien*, 440 Mass. 658, 663 (2004). See Mass. G. Evid. § 611(b)(1). Here, the defendant claims the judge abused his discretion by limiting the defendant's inquiry of Allen-Belmer regarding her inconsistent version of events and the truthfulness of her c. 209A affidavit. We disagree.

On direct examination, Allen-Belmer repeatedly testified that the victim had been struck accidentally by the defendant's elbow. While she acknowledged her statement to the contrary in her c. 209A affidavit, she claimed to have made that statement because she was angry. On cross-examination, she reiterated that she had "filled [the affidavit] out with anger" at a time when she was "still upset and angry with [her] husband." She also explained that she had been angry because the defendant had been spending time with another woman with whom he had fathered a child, and because her son had been injured. Finally, she continued to deny that the defendant had ever punched the

victim. Together, this testimony amply sufficed to explain to the judge that Allen-Belmer was claiming to have falsely accused the defendant in her affidavit because she was angry at him. Therefore, the judge did not abuse his discretion by limiting cross-examination of Allen-Belmer on this subject.

Relative to Allen-Belmer's truthfulness as an affiant, the judge did not abuse his discretion by prohibiting an improper line of questioning. In response to the prosecutor's repeated objections, the judge prohibited the defendant from asking Allen-Belmer if her c. 209A affidavit was "true" and whether she had "lie[d]" when she wrote it. While it is appropriate to ask a witness to explain inconsistencies between prior and present statements, see *Commonwealth* v. *Smith*, 329 Mass. 477, 479-480 (1952), "a witness cannot be asked to assess the credibility of [her] testimony or that of other witnesses." *Commonwealth* v. *Dickinson*, 394 Mass. 702, 706 (1985). See *Commonwealth* v. *Long*, 17 Mass. App. Ct. 707, 708 (1984). There was no abuse of discretion, and *Daye*'s cross-examination requirement was satisfied.

d. *Corroboration.* Because the defendant challenges the sufficiency of the evidence supporting his conviction,[3] and because we cannot "permit convictions based exclusively on inconsistent extrajudicial testimony to stand," *Commonwealth* v. *Daye, supra* at 74, we must determine whether Allen-Belmer's c. 209A

---

[3]The defendant also claims that if Allen-Belmer's c. 209A affidavit was not admissible substantively, the remaining admissible evidence was insufficient to support his conviction, and he is thus entitled to a judgment of acquittal. We disagree. The "constitutional sufficiency of the evidence under *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979), is to be measured upon that which was admitted in evidence without regard to the propriety of the admission." *Commonwealth* v. *Farnsworth*, 76 Mass. App. Ct. 87, 98 (2010). "This is because prejudicial evidentiary errors . . . may be remedied with a new trial, whereas a verdict not supported by sufficient evidence results in a judgment of acquittal." *Ibid.* See *McDaniel* v. *Brown*, 130 S. Ct. 665, 672 (2010). See also *Lockhart* v. *Nelson*, 488 U.S. 33, 34 (1988) ("where the evidence offered by the State and admitted by the trial court — whether erroneously or not — would have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not preclude retrial"); *Kater* v. *Commonwealth*, 421 Mass. 17, 18 (1995) ("If the evidence admitted at the trial was sufficient to send the case to the jury, but is insufficient to send the case to the jury if all improperly admitted evidence is disregarded, double jeopardy principles nevertheless do not bar a retrial").

affidavit was adequately corroborated. The additional evidence required for corroboration under *Daye* "need not be sufficient in itself to establish a factual basis for each element of the crime." *Commonwealth* v. *Clements*, 436 Mass. at 193 n.3. The test for corroboration is lenient, and has been compared to the "corpus delicti" rule of *Commonwealth* v. *Forde*, 392 Mass. 453 (1984), which requires that confessions be corroborated, but only by evidence that demonstrates that the "crime was real and not imaginary." *Id.* at 458. See *Commonwealth* v. *Daye*, *supra* at 74.

In this case, Allen-Belmer's affidavit was corroborated by the evidence that the defendant struck the victim with such force that the victim suffered not only a serious cut to his lip, which required ten stitches to close, but that he also lost consciousness. Despite the defendant's claim to the contrary, this evidence was sufficient to satisfy the *Forde* standard, which permitted the fact finder to conclude the crime was not imaginary. See *Commonwealth* v. *Ragland*, 72 Mass. App. Ct. at 830-831 (second witness's trial testimony that she saw blood on defendant's hands at time of stabbing corroborated first witness's recanted grand jury testimony that placed the knife in the defendant's possession).

To the extent that more was required, the BMC medical records, which were admitted without objection, included the victim's report that the defendant struck the victim's face with the defendant's fist while the victim attempted to intervene on his mother's behalf. Contrary to the defendant's claim, these records were properly admitted as substantive evidence. See *Commonwealth* v. *Dargon*, 457 Mass. 387, 396 (2010); Mass. G. Evid. § 803(4). See also *Commonwealth* v. *DiMonte*, 427 Mass. 233, 242 (1998) ("fact-specific references to the reported cause of the [victim's] injuries are part of [his] medical history and are relevant to treatment" even though "incidental to liability"). The evidence supporting the defendant's conviction was more than sufficient. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979).

*Judgment affirmed.*