# United States Court of Appeals
## For the First Circuit

No. 10-1173

DeWITT TASH,

Petitioner, Appellant,

v.

GARY RODEN, Superintendent; MARTHA COAKLEY, Attorney General,

Respondents, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Boudin, Ripple[*] and Selya,

Circuit Judges.

Janet Hetherwick Pumphrey for appellant.
Amy L. Karangekis, Assistant Attorney General, Criminal
Bureau, with whom Martha Coakley, Attorney General, was on brief
for appellees.

November 16, 2010

[*]Of the Seventh Circuit, sitting by designation.

**BOUDIN, Circuit Judge**. In 2002 Dewitt Tash was convicted of raping a mentally impaired adult woman in his care at a state facility in Feeding Hills, Massachusetts. The putative victim had no use of her arms, legs or hands and was incapable of communication. The case rested importantly, but not entirely, on Tash's confession to the crime. After two unsuccessful state appeals, he sought habeas corpus; the federal district court denied the petition but granted a certificate of appealability.

We recount the facts found by the state courts, supplemented with consistent record evidence. Lynch v. Ficco, 438 F.3d 35, 39 (1st Cir.), cert. denied, 549 U.S. 892 (2006). At trial, the victim did not testify and presumably could not have done so given her impairments. The Commonwealth relied instead on testimony from Geraldine Brown, a licensed practical nurse at the facility; Wayne Macey, an Agawam, Massachusetts, police sergeant to whom Tash confessed; and Christopher Fox, a state psychologist who examined the victim and found her incapable of consenting to sex.

Brown testified that she and Tash were working alone together at the facility in the early morning hours of July 19, 2000. Tash's duties there included cleaning, preparing meals and caring for the facility's four disabled residents; pertinently, both Tash and Brown were responsible for routinely checking and changing the adult briefs (i.e., diapers) worn by the residents, all of whom were incontinent.

At 2:00 a.m., Tash left Brown in a staff lounge and walked toward the residents' rooms. Brown thought this was unusual, as she had recently finished changing all the residents' briefs, and went to investigate. From the hallway, she observed Tash standing inside the victim's room next to her bed--his back to the hallway, his untucked shirt bunched around his waist and his belt unbuckled--as he held both of the victim's legs in the air and pulled her toward him. The victim's diaper had been removed and her nightgown pulled up, leaving her naked from the waist down.

Brown ducked into another resident's room, pretended to be occupied there, said loudly, "I'm in here," and saw Tash rush down the hallway and into the bathroom a few minutes later. Brown then went into the victim's room and found the victim's diaper re-fastened. A strip on the outside of the brief had changed color to indicate moisture inside, but Brown opened it and observed nothing out of the ordinary--including no sign of any sexual trauma. Brown waited almost a week before reporting her suspicions to state officials.

In due course, Macey interviewed Tash at a police station. After Miranda warnings, Tash admitted under questioning that he had twice engaged in sexual contact with the same victim, putting his tongue and penis in the victim's vagina; each incident occurred in the early morning hours, once about six months before and the second time on or around July 19. Tash claimed that he had

-3-

been experiencing impotency and was experimenting to see if his condition had improved.  Macey typed a written version of the admissions, read it to Tash, and asked Tash to read and sign it, which Tash did.

Under Massachusetts penal law, rape is defined as sexual intercourse by force or threat of force and without consent.  See Mass. Gen. Laws ch. 265, § 22(b) (2008); Commonwealth v. Lopez, 745 N.E.2d 961, 965 (Mass. 2001).  Sexual intercourse means penetration of the victim's genitals, however slight.  Commonwealth v. Nylander, 532 N.E.2d 1223, 1225 (Mass. App. Ct. 1989).  If the victim is incapable of consenting--as Tash concedes was true here--the only force that need be proven is the force necessary to effect penetration.  Commonwealth v. Blache, 880 N.E.2d 736, 741 (Mass. 2008).

Tash testified in his defense, contradicting Macey on several key points.  He conceded that he had told Macey that he was experiencing impotency and then admitted upon questioning that he was capable of penetrating the victim despite his impotency; but he claimed in his own testimony that Macey had twisted this hypothetical statement into historical fact.  Although the written confession was consistent with Macey's version, Tash denied reading it or hearing it read before signing it, again contradicting Macey.

As for Brown's eyewitness account, Tash said that he was merely changing the victim's diaper the same way and at the same

time that he always did. Brown herself conceded that Tash normally checked the residents' briefs at 2:00 a.m., although both Brown and a second nurse testified that the accepted method for changing the victim's diaper was to roll her to the side--not to raise her legs in the air.

The jury convicted Tash of one count of rape, Mass. Gen. Laws ch. 265, § 22(b). Tash sought review in the Massachusetts Appeals Court on two occasions, raising claims of insufficient evidence corroborating his confession and ineffective assistance of counsel; both these appeals failed on the merits and the Supreme Judicial Court ("SJC") refused further discretionary review. Commonwealth v. Tash, 814 N.E.2d 764, 2004 WL 2049264 (Mass. App. Ct.) (unpublished table decision), review denied, 816 N.E.2d 1222 (Mass. 2004); Commonwealth v. Tash (Tash II), 897 N.E.2d 1042, 2008 WL 5191455 (Mass. App. Ct. 2008) (unpublished table decision), review denied, 902 N.E.2d 947 (Mass. 2009).

Tash then filed a timely petition for a writ of habeas corpus, 28 U.S.C. § 2254 (2006), in federal district court. His petition claimed three grounds for relief: insufficient corroboration of his confession; insufficient evidence of guilt; and ineffective assistance of counsel. The district court denied the petition but granted a certificate of appealability to this court as to all three issues.

We review de novo the district court's denial of Tash's petition, DeBurgo v. St. Amand, 587 F.3d 61, 67 (1st Cir. 2009); but where a legal claim has been decided by the state court on the merits, a habeas petitioner must show the ruling to be "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); see Williams v. Taylor, 529 U.S. 362, 409-13 (2000). Similarly, factual determinations by the state court must be respected unless shown to be "unreasonable." 28 U.S.C. § 2254(d)(2).

Tash asserts that the Commonwealth failed to show that his confession was "corroborated" by other evidence; in a nutshell, the doctrine is that a criminal conviction cannot rest upon a confession unless it is substantiated by other evidence. The requirement is widely imposed in state and federal criminal cases, see 1 McCormick on Evidence § 145, at 592 (K. Broun ed., 6th ed. 2006); 7 J. Wigmore, Evidence § 2071, at 511-24 (Chadbourn rev. 1978), although Massachusetts did not adopt it until Commonwealth v. Forde, 466 N.E.2d 510, 513 (Mass. 1984).

What Tash overlooks in his briefing of this issue is that the Massachusetts requirement imposed by Forde, even if it were mistakenly applied by the state courts in this case, is not (standing alone) a basis for habeas corpus or its section 2254 counterpart. Both federal remedies are, so far as pertinent, aimed

only at those held "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §§ 2241(c)(3), 2254(a). Habeas jurisprudence is often impenetrable; but this aspect is clear.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Of course, a state requirement may also be one mandated by the federal Constitution, but Tash fails to argue, let alone demonstrate, that corroboration of confessions is of this character.  The leading Supreme Court cases that established the requirement for federal trials, Opper v. United States, 348 U.S. 84, 89-93 (1954), and Smith v. United States, 348 U.S. 147, 156 (1954), described the requirement as the ordinary practice in state as well as federal courts, but noted as well that it was not universally followed in English courts.

More important, Opper and Smith made no reference to constitutional compulsion; corroboration was merely deemed a better rule sanctioned by common law.  See Opper, 348 U.S. at 93.  Learned Hand doubted the soundness of the requirement, Daeche v. United States, 250 F. 566, 571 (2d Cir. 1918), and Wigmore deemed it an obstacle to truth, 7 Wigmore, supra, § 2070, at 510; and in any event, as McCormick observed, "[c]onstitutional considerations . . . do not demand it."  1 McCormick, supra, § 145, at 593.  We have agreed with McCormick.  United States v. Singleterry, 29 F.3d 733, 737 (1st Cir.), cert. denied, 513 U.S. 1048 (1994); accord United States v. Dickerson, 163 F.3d 639, 643 (D.C. Cir. 1999).

Even if it were assumed arguendo that Opper represents a constitutional minimum in at least some cases--which we are far from holding--the outcome in this case would be the same, because there was substantial corroboration of Tash's confession. There is good reason to address the issue here independent of any constitutional requirement of corroboration: this is so because whether Brown's testimony provided substantial evidence of the crime--the key issue under the corroboration doctrine--also bears on Tash's further claim that the entire body evidence against him was constitutionally insufficient.

Jurisdictions applying the requirement differ as to just what must be corroborated, the required proof, and even the rationale. See 1 McCormick, supra, § 145, at 595-96; id. §§ 147-148, at 600-05. Massachusetts takes a narrow view favored by Wigmore, demanding only "some evidence, besides the confession, that the criminal act was committed by someone, that is, that the crime was real and not imaginary." Forde, 466 N.E.2d at 513 (following 7 Wigmore, supra, § 2072, at 524). In federal criminal trials, district courts require "substantial independent evidence" that warrants belief in the truthfulness of the confession. Opper, 348 U.S. at 93.

But neither Opper nor Forde requires that the corroborative evidence be sufficient of its own force to prove the crime beyond a reasonable doubt. Smith, 348 U.S. at 156; cf.

-8-

Commonwealth v. Costello, 582 N.E.2d 938, 940 (Mass. 1991). The point is to fortify the confession, not render it superfluous. "Fortification" is a matter of degree; but the corroborating evidence against Tash was substantial. For Brown, a co-worker present on the scene, testified to seeing Tash in circumstances supporting the charge of rape and testified further to Tash's retreat when she warned him of her presence.

As already recounted, Brown testified to seeing Tash on the night in question, with his untucked shirt bunched around his waist and his belt unbuckled, standing opposite the victim naked to the waist in her bed, as he held both of the victim's legs in the air and pulled her toward him. Further, it was Brown and not Tash who usually changed the female residents' briefs when the two worked together. And holding the victim's legs in the air with one hand and lifting her buttocks off the bed--as Brown observed Tash doing--was contrary to standard practice for changing the diapers.

Tash's counsel argues that Brown's testimony alone does not prove actual physical contact; it is Tash's confession that supplies this critical detail, as well as a motive for his behavior. But, as the precedents recited above make clear, the corroboration need not prove the offense: it is enough that corroboration bolster significantly the likelihood that the confession itself is true and that, taken together, the

corroboration and the confession establish the crime beyond a reasonable doubt.  To this latter issue we now turn.

Tash's insufficient evidence claim, relying on <u>Jackson</u> v. <u>Virginia</u>, 443 U.S. 307 (1979), does invoke a rule of federal constitutional law; but it is not clear that the claim was exhausted.  Tash's first application to the SJC did include <u>Jackson</u> in a string cite for the statement that sufficient evidence is a due process requirement; but the argument developed before and after in the application related not to the overall sufficiency of the evidence but to the sufficiency of the corroboration.  Still, the <u>Jackson</u> claim fails on the merits, and we are free to affirm on this ground.  <u>Clarke</u> v. <u>Spencer</u>, 582 F.3d 135, 145 (1st Cir. 2009).

For a <u>Jackson</u> claim, Tash must show that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," 443 U.S. at 319, even when credibility determinations and competing factual inferences are taken in favor of the verdict, <u>id.</u> at 326.  This might sound like ordinary circuit court review of jury verdicts in federal trials--no easy hurdle itself, <u>United States</u> v. <u>Woodward</u>, 149 F.3d 46, 56 (1st Cir. 1998), <u>cert. denied</u>, 525 U.S. 1138 (1999)--but in practice the <u>Jackson</u> standard is higher and is rarely met where there is plausible evidence to support a verdict.  <u>Cf.</u> <u>Stewart</u> v. <u>Coalter</u>, 48 F.3d 610, 613-16 (1st Cir.), <u>cert. denied</u>, 516 U.S. 853 (1995).

If Macey's testimony is credited, Tash confessed orally and in writing to the only disputed element--sexual intercourse. Tash did not deny signing the document but merely claimed that he had not read it. If Brown's testimony is credited, highly suspicious circumstances "fortified" the confession, and penetration--if not alone proved by Brown's testimony--was certainly made much more likely. Thus, the Jackson claim fails-- even if considered de novo because not decided on the merits in state court, Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001), cert. denied, 535 U.S. 1018 (2002).

Tash's remaining argument is that his trial counsel was ineffective under Strickland v. Washington, 466 U.S. 668 (1984), and its progeny. The Massachusetts Appeals Court decided this claim on the merits, Tash II, 2008 WL 5191455, at *1-*2, under state case law functionally equivalent to the relevant federal standards, see Scarpa v. Dubois, 38 F.3d 1, 7-8 (1st Cir. 1994), cert. denied, 513 U.S. 1129 (1995); and it was raised in Tash's second application to the SJC. So the claim is ripe for habeas review, albeit under the deferential standards already described.

The ineffectiveness claim rests on three alleged errors by trial counsel. The first is that trial counsel retained a psychologist with purported expertise in false confessions but declined to call him as a witness at trial. But, as the Appeals Court persuasively explained, once counsel had reviewed the

-11-

expert's proposed testimony, declining to call him was a reasonable tactical judgment.  Tash II, 2008 WL 5191455, at *1.

This is so because the psychologist's proposed testimony about false confessions was based upon a theory that had not been established as reliable; the theory concerned false confessions by individuals of low intelligence and compliant personalities, but the psychologist had examined Tash and found him to be intelligent; and a false-confession defense would have effectively, if not literally, required Tash to admit to making the confession in the first place.  In some respects, the expert could easily have worsened Tash's position.

Next, Tash says that trial counsel botched the impeachment of Brown by failing to cross-examine her on some of the inconsistencies between her trial testimony and her testimony at prior hearings, opting instead to play taped recordings of those statements at the close of the defense case.  But in fact counsel did vigorously cross-examine Brown on inconsistent details,[1] and electing to focus on some points rather than others is presumptively a strategic choice.  Yarborough v. Gentry, 540 U.S.

---

[1]Trial counsel elicited that Brown told the grand jury that she changed the residents' briefs that night at 12:30 a.m., not 1:30 a.m., and that it was "intuition" that led her to investigate Tash's activities at 2:00 a.m. rather than the oddity of Tash going to change the briefs again so soon after she had done so.  He also brought out that Brown had never before described Tash as "rushing" out of the victim's room nor claimed to be afraid of him in explaining her reluctance to report what she saw.

1, 8 (2003) (per curiam); <u>Knight</u> v. <u>Spencer</u>, 447 F.3d 6, 17 (1st Cir. 2006).

Here, the additional details that Tash now says should have been stressed were hardly critical.  One claim is that counsel should have contrasted one Brown reckoning of time with another-- that Tash had been with the victim for "a few minutes" versus "three minutes."  The other is that counsel allowed Brown to say, inaccurately, that she had never before said she was afraid of Tash because no one had ever asked her--matters relevant mainly to her delay in reporting the crime to authorities.  This kind of second-guessing of cross-examination on small details is fruitless.

Finally, although Brown helpfully conceded that her check of the victim showed no signs of sexual trauma, Tash says counsel should have pursued additional, cumulative evidence of the absence of sexual trauma.  The Appeals Court was hardly unreasonable in finding that counsel was not deficient for failing to pile on duplicative evidence of this uncontested fact.  <u>Cf.</u> <u>Ruiz</u> v. <u>United States</u>, 339 F.3d 39, 42 (1st Cir. 2003).

<u>Affirmed</u>.