# United States Court of Appeals
## For the First Circuit

No. 18-1979

MIGUEL ROMAN,

Petitioner, Appellant,

v.

LISA A. MITCHELL, Superintendent,
Old Colony Correctional Center,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Allison D. Burroughs, U.S. District Judge]

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

Donald A. Harwood and Donald A. Harwood, Esq. PC on brief for appellant.
Susanne Reardon, Assistant Attorney General of Massachusetts, and Maura Healey, Attorney General of Massachusetts, on brief for appellee.

May 13, 2019

**KAYATTA**, **Circuit Judge**.  Miguel Roman appeals from the district court's dismissal of his habeas petition under 28 U.S.C. § 2254 contesting his state-court conviction and ongoing detention for first-degree murder.  The district court determined that the Massachusetts Supreme Judicial Court (SJC) acted reasonably in concluding that the evidence sufficiently supported the conviction.  We affirm for the same reason.

## I.

## A.

Because this appeal challenges the sufficiency of the evidence, we recite the facts "in the light most compatible with the jury's verdict, consistent with record support."  Leftwich v. Maloney, 532 F.3d 20, 21 (1st Cir. 2008) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  We summarize here only those central facts sufficient to explain our conclusion.  A fuller recitation of these facts are set forth in the SJC's opinion.  See Commonwealth v. Roman, 18 N.E.3d 1069, 1071 (Mass. 2014).

The events underlying Roman's conviction took place in the early hours of January 29, 2010 in Holyoke, Massachusetts.  At around 2:00 a.m., five men left a nightclub in a Nissan Altima.  Luis Soto, whose girlfriend owned the car, drove, Angel Fernandez was in the front passenger seat, his brother Felipe sat behind him in the right rear seat, Roman was behind the driver's seat, and Shawn Tiago sat in the middle of the backseat between Roman and

Felipe.  Soto drove down High Street until Roman told him to turn right onto Essex Street.  Soto testified that, after he turned the car onto Essex Street, he "heard a detonation."  He could not tell whether there had been more than one shot because his ears were ringing.

Soto immediately stopped the car and shifted it into park.  Felipe and then Angel got out of the vehicle and started running toward High Street.  Soto testified that he turned around and saw Roman holding a gun in his right hand, close to Tiago's head.  Tiago slouched forward toward the front of the car.  After initially hesitating, Soto was the third person to exit the Altima.

Roman then got out of the vehicle, walked around the back of the car, opened the rear passenger's side door, and leaned inside.  As Soto ran toward High Street, he heard another shot.  The car proceeded to Newton Street, where Tiago's body was later found in the road with two bullet holes in the left rear side of his head and one in his right temple.

Another government witness, Barbara St. Amand, who lived on Newton Street, testified that she looked out her window after hearing one or two gunshots and tires screeching outside.  She saw a man wearing a black hooded jacket, the same type Felipe was wearing that night, pull something out of the rear passenger side of the car and re-enter the backseat on the driver's side.

Meanwhile, Felipe, Angel, and Soto arrived at Sam's Food, a nearby store on High Street. Soto and Angel went inside the store, and Felipe stayed outside, close to the door. Roman called Angel's cellphone at 2:04 a.m., and the call connected for forty-four seconds. Roman, driving the Altima, arrived at Sam's within two minutes after the car first stopped on Essex Street. Roman left the car outside the store and ran away.

**B.**

In February 2010, a Hampden County grand jury indicted Roman for first-degree murder and possession of a class B substance (cocaine). The case was severed from those of co-defendants Soto and Angel, who agreed to testify against Roman pursuant to cooperation agreements.

After trial, the jury found Roman guilty on both charges. The Hampton County Superior Court sentenced him to life imprisonment for the murder conviction. Roman timely appealed to the SJC, arguing, inter alia, that the trial court erred by denying his motion for a required finding of not guilty at the close of the Commonwealth's case. The SJC affirmed his convictions and found the evidence constitutionally sufficient to establish that he shot Tiago.

In January 2016, Roman timely filed a petition for a writ of habeas corpus in the U.S. District Court for the District of Massachusetts, raising a single claim challenging the

- 4 -

sufficiency of the evidence grounding his murder conviction. The district court denied his petition but issued a Certificate of Appealability. We have jurisdiction under 28 U.S.C. § 2253(a). We review the district court's denial of Roman's habeas petition de novo. See Scott v. Gelb, 810 F.3d 94, 98 (1st Cir. 2016).

## II.

In this case, the petition assails only the sufficiency of the evidence as governed by Jackson v. Virginia, 443 U.S. 307 (1979).[1] To set aside the verdict under the Due Process Clause of the U.S. Constitution for insufficient evidence, Roman needed to convince the state courts that, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. "This standard 'exhibits great respect for the jury's verdict,'" Winfield v. O'Brien, 775 F.3d 1, 7 (1st Cir. 2014) (quoting Magraw v. Roden, 743 F.3d 1, 4 (1st Cir. 2014)), but it does not insulate verdicts based on "evidentiary interpretations and illations that are unreasonable,

---

[1] Under Commonwealth v. Latimore, 393 N.E.2d 370, 375 (Mass. 1979), Massachusetts state courts apply a sufficiency standard that is "functionally identical" to the standard promulgated by the U.S. Supreme Court in Jackson, 443 U.S. at 319. Logan v. Gelb, 790 F.3d 65, 71 (1st Cir. 2015). Thus, "we can securely reason that in scouring the record for Latimore error and finding none the SJC effectively answered the federal constitutional question." Housen v. Gelb, 744 F.3d 221, 225 (1st Cir. 2014) (quoting Leftwich, 532 F.3d at 24).

insupportable or overly speculative," id. (quoting United States v. Spinney, 65 F.3d 231, 234 (1st Cir. 1995)).  Still, the Jackson standard is "rarely met where there is plausible evidence to support a verdict."  Tash v. Roden, 626 F.3d 15, 20 (1st Cir. 2010).

Having lost in state court at trial and on appeal, Roman does not get a full redo in federal court.  When a state court has decided a legal claim on the merits, a habeas petitioner must show that the ruling was "contrary to, or involv[ed] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  Tash, 626 F.3d at 18 (quoting 28 U.S.C. § 2254(d)(1)).  In short, in a case such as this, we ask not whether the evidence was sufficient; rather, we ask whether the SJC's sufficiency finding was "objectively unreasonable."  See Hurtado v. Tucker, 245 F.3d 7, 18 (1st Cir. 2001) (quoting Williams v. Taylor, 529 U.S. 362, 409 (2000)); see also id. at 16 ("Habeas review involves the layering of two standards.  The habeas question of whether the state court decision is objectively unreasonable is layered on top of the underlying standard governing the constitutional right asserted.").  In this context, "unreasonable" means that the decision "evinces some increment of incorrectness beyond mere error."  Leftwich, 532 F.3d at 23 (citing McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002) (en banc)).

Here, Roman argues that the SJC's rejection of his sufficiency claim "constituted an unreasonable application of the law to the facts [and] . . . was arbitrary and devoid of factual support." He contends that Soto's and Felipe's testimony at trial was "uncorroborated," "perjurious," and "illogical." Roman's consistent defense has been that Felipe was the shooter because Tiago sustained a fatal gunshot wound to his right temple, and Felipe was seated to Tiago's right. And, he asserts, Felipe and Soto both testified to hearing only one shot fired in the car. He also points to the testimony of St. Amand, a disinterested witness, stating that she saw a man dressed like Felipe pulling something (presumably the victim's body) out of the rear of the Altima and suggesting that two men were there with the body, as opposed to the government's theory that Roman alone dumped the body on Newton Street.

But, as the SJC found, other trial testimony and video recordings from local security cameras significantly undercut Roman's alternate theory. Soto and Felipe testified that Felipe fled from the rear passenger's side door as soon as he heard the first gunshot. Video footage from an Essex Street camera confirmed that between 2:02:22 a.m. and 2:02:56 a.m., a person from the rear passenger's seat first exited the car, followed by a person from the front passenger's seat, and then the driver. Roman, 18 N.E.3d at 1073. The last person to leave the car got out from where Roman

- 7 -

sat, behind the driver's seat. That person walked around to the rear passenger's side, and leaned inside for about thirteen seconds, before getting in the driver's seat and driving away. Id. Accordingly, the SJC reasonably determined that the jury could have found that Felipe, then Angel and Soto, abandoned the car and ran toward High Street, while Roman stayed behind and shot Tiago again, just as Soto testified.

Footage from Sam's Food, in turn, showed three men (not two) arriving at the store between 2:04:02 a.m. and 2:04:17 a.m. The recording also showed Angel talking on his cellphone at the same time the Altima arrived out front. Coupled with telephone records showing that Roman called Angel at around the same time as the car pulled up, the SJC reasonably concluded that the jury could have found in this evidence further support for the testimony that Felipe was at the store when Roman arrived with the car.

The security camera recordings also allowed the SJC to determine that only one minute and fifty-six seconds passed from the time the Altima stopped on Essex Street until it arrived at Sam's Food store. The SJC therefore reasoned that "[t]here would only have been enough time for the convergence of Soto, Angel, and Felipe, and the Altima at Sam's . . . if events had occurred as Soto and Felipe testified." Roman, 18 N.E.3d at 1074. That is, if the three men who arrived on foot ran directly to Sam's from Essex Street.

It is undoubtedly "within the province of the jury" to evaluate witness credibility. Foxworth, 570 F.3d at 427. A rational jury was certainly entitled to discredit St. Amand's testimony in light of contravening evidence. See Housen, 744 F.3d at 226 ("On review for evidentiary sufficiency, . . . 'a habeas court may not freely reweigh competing inferences but must accept those reasonable inferences that are most compatible with the jury's verdict.'" (quoting Magraw, 743 F.3d at 7)); Hurtado, 245 F.3d at 19 ("[W]here the argument over the correctness of the state court's ultimate conclusion . . . call[s] for a choice between credible (although mutually opposed) views, the habeas inquiry on objective unreasonableness ends.").

Roman's argument that the fatal gunshot wound to Tiago's right temple "conclusively" proves that Felipe was the shooter likewise falls flat. The medical examiner testified that Tiago sustained three gunshot wounds to the head: two to the left rear side almost on top of one another and a third on the right temple. And at least one of the left-side wounds was also potentially fatal. Roman, 18 N.E.3d at 1075. In any event, the evidence credibly placed Roman on both the left and right sides of the victim as he moved out of and around the car.

Felipe's and Soto's testimony regarding how many gunshots they heard in the car is also not as conclusive as Roman would have us believe. Although Soto initially testified that he

- 9 -

heard one detonation, he also said that the sound was "very" loud and that he could not tell at first whether it came from inside or outside the vehicle. Soto clarified, in response to further questioning, that he could not make out "whether there was one bang or more than one bang" because his ears were ringing. Felipe testified only that he "heard a bang" and that he knew it was "a gunshot." These statements are entirely consistent with the testimony of the government's ballistics expert, who opined that the type of gun likely used to kill the victim, a Jennings Bryco model J22 semiautomatic pistol, "is very loud and capable of firing shots in rapid succession." Roman, 18 N.E.3d at 1075. Soto and Felipe also testified to hearing another gunshot as they ran towards High Street. A shell casing recovered from the vicinity of where the Altima stopped on Essex Street further corroborates this testimony and the SJC's conclusion that Roman fired a third shot into Tiago's right temple area as he stood outside the open right rear door of the car.

Finally, Roman also emphasizes that, while he had no motive to kill Tiago, the Gonzalez brothers had been involved in an altercation with Tiago the week before over an unpaid debt, after which Tiago threatened to kill Angel. But, as the district court explained, because motive, while probative, is not an element of the crime of deliberately premeditated murder, the absence of evidence of motive is insufficient to undermine the SJC's decision

- 10 -

under Jackson.  See Commonwealth v. Sylvia, 921 N.E.2d 968, 975–76 (Mass. 2010) (noting that the government is not required to prove motive to prove first-degree murder on a theory of premeditation).

Viewing the evidence as a whole in the light most favorable to the verdict, we cannot say that the SJC unreasonably applied Jackson or reached an unreasonable determination of the facts.  The state court "did not ignore material evidence or a key argument made by the defendant" and "[i]ts articulated reasons went to the conclusions it reached."  Hurtado, 245 F.3d at 18.  It reasonably concluded that a rational jury could have found beyond a reasonable doubt "that [Roman] fired two shots at close range into the left temple of the victim, then went around to the other side of the car, opened the rear passenger's side door, and fired a third shot into the victim's right temple."

## III.

For the foregoing reasons, we affirm the district court's denial of habeas relief.