NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1215

COMMONWEALTH

vs.

RICARDO CALVO, JR.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Ricardo Calvo, Jr., was indicted on drug and firearm-related charges, as an armed career criminal. The defendant filed a motion to dismiss the firearm-related charges claiming that the Commonwealth presented insufficient evidence of probable cause to the grand jury; a Superior Court judge (first judge) denied the motion after a nonevidentiary hearing. The defendant also filed a motion to suppress. After an evidentiary hearing, a second judge denied, in part, and allowed, in part, the motion. Following a jury trial, the defendant was convicted of possession with intent to distribute cocaine, and possession of a firearm and ammunition without a firearm identification card (FID).[1] After a bench trial, the

---

[1] The jury found the defendant not guilty of distribution of cocaine.

judge found the defendant guilty of the prior offense portion of the charge of possession with intent to distribute cocaine, and of being a level two, armed career criminal on the firearm and ammunition charges.

On appeal, the defendant claims that the first judge erred in denying his motion to dismiss, that it was error to allow police officers to testify to the ultimate issue of whether the defendant intended to distribute the drugs, that the evidence was insufficient, and that the second judge erred in denying his motion to suppress.

The Commonwealth concedes that the defendant is entitled to a new trial on the firearm-related charges as it did not present evidence during the trial regarding licensure. We agree and vacate the convictions and set aside the verdicts on the charges of possession of a firearm and ammunition without an FID card as an armed career criminal pursuant to Commonwealth v. Guardado, 491 Mass. 666 (2023) (Guardado I), S.C., 493 Mass. 1 (2023), petition for cert. filed, U.S. Supreme Ct. No. 23-886 (Feb. 14, 2024) (Guardado II). We affirm the remaining conviction.

1. Background. As a result of complaints about drug activity, members of the Worcester police department neighborhood response team set up surveillance at a four story apartment building located at 5 King Street, an area where police had made numerous drug, firearm, and violent crimes

2

arrests.  On February 20, 2019, Sergeant Jason Gaumond saw the defendant twice exit 5 King Street through the front door.  Each time, the defendant met with someone for a few minutes and then reentered the building through the front door.  In the early morning hours of March 8, police saw the defendant leave the first floor back door of 5 King Street, apartment 1-L, walk around to the front of the building, and over to a group of four people.  The defendant spoke to the group, received money, and dropped something on the sidewalk (that was picked up by Kenny Liriano, who was known to police from "previous incidents").  After the defendant walked away, the police approached the group.  Officer Luis Baez spoke to Liriano, who initially refused to open his mouth; when he eventually did open it, Liriano's mouth was empty.  No drugs were found.

A couple of hours later, police saw a gray Toyota sedan circle around the King Street neighborhood.  The driver, later identified as Jason Fontaine, was the only occupant of the Toyota.  Fontaine parked in the area of 5 King Street as the defendant was leaving the building; the defendant then walked by the Toyota with a cell phone in his hand.  After Fontaine got his attention, the defendant went back to the Toyota, talked to Fontaine through the open passenger side window, and then got in the front passenger seat.  Fontaine pulled out, and turned on to Main Street.  Police observed that Fontaine appeared to pay more

3

attention to the defendant than the road, as the defendant appeared to be manipulating something on his lap. The defendant handed something to Fontaine who immediately pulled over approximately one block from where Fontaine picked him up. The defendant, who was in the car for less than one minute, got out and walked towards King Street, holding paper money in his hand. Fontaine returned to King Street, and entered a store where he purchased a small glass pipe that opened on both ends, and a small piece of a copper Brillo pad. Police approached Fontaine, identified themselves, looked in the Toyota, and recovered two pieces of crack cocaine from the driver's seat. Approximately five minutes after the defendant got out of the Toyota, he returned to the front of 5 King Street where he was arrested. A search of the defendant's person revealed $685 in cash, a cell phone, and a spring assisted knife. The defendant, who had keys for his apartment "on his chest," told police that he lived in apartment 1-L at 5 King Street.

Police went to the apartment and spoke to Jasmine DeJesus, the defendant's girlfriend. She eventually gave permission to the police to search the couple's shared apartment, which included a kitchen, master bedroom, and "kids room." In the couple's master bedroom police found men's clothing, baseball hats, and men's items on a bureau. In the windowsill, police found digital scales, packaging, a gum container with ten grams

4

of cocaine "cut" in a red pouch, sandwich bags, cut corner bags, scissors, a switchblade, a "straight shooter," rolling papers, a Brillo pad, two glass pipes, a lighter, a spoon, and a "diaper bag." Between the mattress and the box spring, police found an unloaded, operable Glock 40 firearm with a magazine with bullets next to it, and a double edged knife.

Worcester police vice squad officer Michael Ryder testified as an expert witness in surveillance for narcotics distribution and the modus operandi of drug dealers, buyers, and users. He also testified about the nature of the so-called "meaningless ride." Ryder also testified that the items recovered from the windowsill in the master bedroom were more consistent with drug distribution than personal use. Finally, he testified that drug dealers often have weapons for protection, and that these weapons are often hidden between a box spring and mattress.

2. Discussion. a. Motion to dismiss. The defendant contends that the Commonwealth failed to present evidence to the grand jury to establish probable cause for the firearm-related charges, and failed to present evidence that he did not possess an FID card. "A grand jury must hear sufficient evidence to establish the identity of the accused . . . and probable cause to arrest him for the crime" (quotation omitted). Commonwealth v. Stirlacci, 483 Mass. 775, 780 (2020). "Probable cause is a considerably less exacting standard than that required to

5

support a conviction at trial."  Id. (quotation omitted).  We view the evidence heard by the grand jury in the light most favorable to the Commonwealth.  See Commonwealth v. Rakes, 478 Mass. 22, 29 (2017).

Here the Commonwealth proceeded on a theory of constructive possession.  The grand jury heard evidence that the defendant was seen coming and going from 5 King Street, and selling crack cocaine.  They heard evidence that the defendant lived at 5 King Street, had keys to the apartment on his person, and shared the master bedroom where the drugs, paraphernalia, firearm, and ammunition were located.  This was sufficient to establish probable cause of constructive possession.  See Commonwealth v. Rarick, 23 Mass. App. Ct. 912, 912 (1986) (and cases cited; constructive possession supported by "evidence that the contraband was found in proximity to personal effects of the defendant in areas of the dwelling . . . to which other evidence indicates the defendant has a particular relationship").

The defendant's argument that there was no evidence before the grand jury that people engaged in drug distribution often possess weapons is unavailing as such evidence is not required to establish probable cause.  The Commonwealth need only present the grand jury "with the quantum of evidence adequate to support probable cause, and not the greater amount of evidence necessary

to support a conviction." Commonwealth v. Reyes, 98 Mass. App. Ct. 797, 802-803 (2020).

Although the defendant is entitled to a new trial on the firearm-related charges as set forth supra, we briefly address his claim that the grand jury heard insufficient evidence concerning licensure. Neither Guardado I nor Guardado II requires the Commonwealth to present evidence of licensure to the grand jury. But here the grand jury heard evidence that the firearm had been reported missing one year prior, the defendant was not "registered to own a gun," and he did not have an FID card. The motion to dismiss was properly denied.

b. Police testimony. Prior to trial, the defendant filed a motion in limine to preclude police fact witnesses from testifying as expert witnesses, and to limit their testimony about why they were in the area of 5 King Street to "citizen complaints," without specifying the type of complaint. The judge ruled that police could testify about what they are trained to look for and what they observed, but not about the "final step." She also ruled that they could use the phrase "alleged drug-related activity." The defendant contends that he was prejudiced by the testimony of two police witnesses in contravention of these pretrial rulings.[2]

---

[2] The judge sustained all but one of defense counsel's objections, and instructed the jury to disregard the evidence

7

Officer Alexander Maracallo testified that the police surveillance was related to "possible drug dealing." He also testified that he "was to conduct surveillance in a particular area and suspect." The judge struck the first answer and the term "suspect" from the second answer. Even assuming that the words "dealing" and "suspect" contravened the judge's ruling and were properly stricken, we presume the jury followed the judge's instruction to disregard Maracallo's answer. See Commonwealth v. Williams, 450 Mass. 645, 651 (2008).

The defendant next contends that Gaumond's use of the term "drug area," which the judge struck, prejudiced him. Even if this term violated the judge's pretrial rulings, the Commonwealth contends, and we agree, that evidence that an area is known for drug activity is generally admissible and that the defendant in any event opened the door to this testimony when defense counsel asked Maracallo if the area was a high crime area where he had made arrests for drug possession and distribution, crimes of violence, and firearm possession in the past. Again, to the extent that the judge struck portions of

---

that she struck. Defense counsel assisted in crafting the instruction, did not object to the instruction, and did not move for a mistrial. The defendant contends this claim of error was preserved, while the Commonwealth argues that it was not. However, under either standard of review, the result is the same.

8

that testimony, the defendant received more than he was entitled to.  See Commonwealth v. Cassidy, 470 Mass. 201, 224 (2014).  At worst, the testimony was cumulative of other evidence.  See Commonwealth v. Best, 50 Mass. App. Ct. 722, 727 (2001).

Next, the defendant challenges Maracallo's testimony that he told Fontaine that he would be charged with drug possession. The judge instructed the jury that Maracallo was not testifying as an expert witness, and therefore whether a suspected narcotic was for personal use or distribution was a jury question. Contrary to the defendant's claim, this testimony was not inadmissible opinion evidence that Fontaine was a "buyer."  It was evidence that Fontaine was found in possession of crack cocaine.  Contrast Commonwealth v. Rodriguez, 456 Mass. 578, 592 (2010) (police testimony that they arrested "buyer" inadmissible opinion evidence).  The defendant also claims that Gaumond's testimony that he was familiar with the defendant's clothing was inadmissible opinion evidence.  We disagree.  This testimony was based on Gaumond's direct observations of the defendant and his identity, nothing more.

Finally, the defendant claims error in Maracallo's testimony that based on his training and experience, Fontaine purchased "drug paraphernalia,"[3] and, during cross-examination,

_____

[3] Maracallo testified that Fontaine "bought a small cylinder.  They usually comes in [sic] a rose, there's a rose

when he testified that "we work as a unit. So my job was to follow the buyer -- I'm sorry -- the vehicle." The judge struck a portion of each answer and gave an instruction to the jury (that defense counsel assisted with and did not object to) that Maracallo was testifying as a fact witness, and not an expert witness. See Commonwealth v. Amran, 471 Mass. 354, 360 (2015) (no prejudice where curative instruction deemed sufficient by defense counsel). The jury "are presumed to follow a judge's instructions, including instructions to disregard certain testimony." Williams, 450 Mass. at 651. Here the jury's acquittal on the distribution charge is evidence that they were able to disregard excluded testimony. See Commonwealth v. Bourgeois, 68 Mass. App. Ct. 433, 438 (2007).

c. Sufficiency of the evidence. The defendant contends the evidence was insufficient to convict him of any of the charges. The "question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979). "[C]ircumstantial evidence is competent to establish guilt beyond a reasonable doubt." Commonwealth v.

_____

that comes in it, but drug addicts, they usually take the rose out."

10

Bush, 427 Mass. 26, 30 (1998). See Commonwealth v. Casale, 381 Mass. 167, 173 (1980) ("inferences drawn by the jury need only be reasonable and possible and need not be necessary or inescapable").

　　i. Drug charges. To prove the crime of possession with intent to distribute, the Commonwealth must prove, beyond a reasonable doubt, that the defendant "(1) knowingly possess[ed] [cocaine] and (2) intend[ed] to transfer it physically to another person." Commonwealth v. Tavernier, 76 Mass. App. Ct. 351, 355 (2010). The defendant only contests the element of possession. To establish constructive possession, the Commonwealth must prove that the defendant had knowledge of the items and the ability and intention to exercise dominion and control over them. See Commonwealth v. Hubbard, 69 Mass. App. Ct. 232, 237 (2007). "Although mere presence where drugs are discovered is not enough to support an inference of possession of the drugs, the defendant's presence, coupled with a 'plus factor,' i.e., other incriminating evidence, may suffice." Commonwealth v. Ortega, 441 Mass. 170, 174 (2004) (quotation omitted).

　　Here, police observed the defendant coming and going from the apartment, where the defendant admitted he lived. See Ortega, 441 Mass. at 174-175. The contraband was found in the master bedroom, which the defendant shared with his girlfriend.

11

"Residential status . . . is a relevant inculpatory factor to be considered . . . since it indicates more than mere presence." Commonwealth v. Handy, 30 Mass. App. Ct. 776, 781 n.5 (1991) (quotation omitted).  Additionally, keys that opened the front and back doors of the apartment were found on the defendant's person.  See Commonwealth v. Delarosa, 50 Mass. App. Ct. 623, 627 (2000) (possession of keys to apartment connected defendant to apartment where contraband found).  The master bedroom contained men's clothing and men's items.  The only other bedroom in the apartment had children's items.  From this the jury could infer that the defendant shared the master bedroom with his girlfriend.  See Commonwealth v. Rivera, 31 Mass. App. Ct. 554, 556-557 (1991) (evidence showed connection to bedroom in apartment and no connection to other bedroom).  That there were no documents with the defendant's name on them or photographs of him in the apartment is of no moment.  Such items are not necessary to link the defendant to the master bedroom.

In addition, police observations of the defendant's behavior before the arrest, as set forth supra, was consistent with the sale of drugs, and the contraband on the windowsill in the master bedroom suggested that the drugs' owner was selling them.  See Commonwealth v. Proia, 92 Mass. App. Ct. 824, 831 (2018) (constructive possession may be proved by linking defendant to area in home where contraband is found).  This

12

evidence, coupled with Ryder's expert witness testimony, permitted the jury to infer that the defendant left his apartment with the drugs and returned there to obtain more drugs to sell. This conclusion is buttressed by the discovery of $685 in cash on the defendant's person when he was arrested outside of his apartment building. See Commonwealth v. Montalvo, 76 Mass. App. Ct. 319, 324-325 (2010).

ii. Firearm-related charges. Although, as discussed above, we are vacating the defendant's convictions on the firearm-related charges pursuant to the Guardado decisions, we comment on the sufficiency of the evidence to determine whether he can be retried. For the reasons set forth supra, the evidence likewise established that the defendant constructively possessed the firearm and ammunition located in between the mattress and box spring in the master bedroom. The jury also heard expert testimony from Ryder that drug dealers possess weapons to protect themselves, their money and contraband, and that these weapons are often concealed between a box spring and mattress. From this the jury could infer that the defendant had knowledge of and intended to exercise dominion and control over the firearm and ammunition located underneath the mattress in the master bedroom where he slept. See Hubbard, 69 Mass. App. Ct. at 237.

13

d. Consent to search. The defendant claims that the judge erred in denying his motion to suppress because DeJesus did not consent to the search of the apartment. The second judge ruled that DeJesus freely and voluntarily consented to the search of the apartment based on the following findings. "DeJesus [either] affirmatively responded to [the police] request to enter [the apartment} or [she] only stepped back, allowing [their] entry." See Commonwealth v. Rogers, 444 Mass. 234, 240 (2005) (occupant's gesture or stepping aside from threshold in response to request from police amounts to consent to enter). About an hour later, "DeJesus, the lessee of the apartment, said she had something to show police. Before allowing her to do so, police had DeJesus sign a written consent form permitting officers to search the apartment." Because DeJesus consented to the search, it was lawful.

To the extent that the defendant challenges the judge's finding of the voluntariness of DeJesus's consent, this is a question of fact, and we defer to the judge's findings which are not clearly erroneous. See Commonwealth v. Soto-Suazo, 100 Mass. App. Ct. 460, 467 (2021). Although DeJesus initially refused to allow the police to search the apartment, she later changed her mind and gave her consent. This is evidence that DeJesus understood her right to refuse to consent to the search. While being videotaped, DeJesus signed a consent to search form,

14

and led police to the windowsill where the contraband was located.  This is further evidence of DeJesus's free and voluntary consent.  See id. at 468.  Although police told DeJesus that they did not want to execute a search warrant when her children returned from school (in order to not traumatize them) -- and while in some circumstances such a statement might support an inference that the police were attempting to obtain consent by frightening a resident about the effects on her children of not doing so -- the judge's finding that this did not establish coercion was adequately supported, as was his conclusion that it did not negate the voluntariness of DeJesus's consent.

3. Conclusion.  The judgments of conviction of possession of a firearm and possession of ammunition without an FID card are vacated and the verdicts are set aside, with the Commonwealth remaining free to retry the defendant if it so chooses.  See Guardado II, 493 Mass. at 12.  The judgment of

15

conviction on the charge of possession with intent to distribute cocaine is affirmed.

So ordered.

By the Court (Rubin, Blake & Shin, JJ.[4]),

Assistant Clerk

Entered:  April 4, 2024.

---

[4] The panelists are listed in order of seniority.